Slip Op. 20-92

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NUCOR CORPORATION,<br><br>    Plaintiff,<br><br>and<br><br>DONGBU INCHEON STEEL CO., LTD., and DONGBU STEEL CO., LTD.,<br><br>    Consolidated Plaintiffs,<br><br>and<br><br>UNITED STATES STEEL CORPORATION,<br><br>    Plaintiff-Intervenor,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>DONGBU STEEL CO., LTD., DONGBU INCHEON STEEL CO., LTD., HYUNDAI STEEL COMPANY, NUCOR CORPORATION, UNITED STATES STEEL CORPORATION, CALIFORNIA STEEL INDUSTRIES, and STEEL DYNAMICS, INC.,<br><br>    Defendant-Intervenors. | Before: Jennifer Choe-Groves, Judge<br><br>Consol. Court No. 19-00042 |

**OPINION AND ORDER**

[Sustaining in part and remanding in part the U.S. Department of Commerce's <u>Final Results</u> of the first administrative review of the countervailing duty order on <u>Certain Corrosion-Resistant Steel Products From the Republic of Korea</u>.]

Dated: July 2, 2020

<u>Alan H. Price</u>, <u>Adam M. Teslik</u>, <u>Elizabeth S. Lee</u>, <u>Robert E. DeFrancesco III</u>, and <u>Tessa V. Capeloto</u>, Wiley Rein LLP, of Washington, D.C., for Plaintiff and Defendant-Intervenor Nucor Corporation.  <u>Christopher B. Weld</u>, <u>Maureen E. Thorson</u>, <u>Stephanie M. Bell</u>, and <u>Timothy C. Brightbill</u> also appeared.

<u>Donald B. Cameron</u>, <u>Brady W. Mills</u>, <u>Julie C. Mendoza</u>, <u>Mary S. Hodgins</u>, and <u>R. Will Planert</u>, Morris, Manning, & Martin, LLP of Washington, D.C., for Consolidated Plaintiffs and Defendant-Intervenors Dongbu Steel Co., Ltd. and Dongbu Incheon Steel Co., Ltd, and Defendant-Intervenor Hyundai Steel Co.  <u>Edward J. Thomas III</u>, <u>Eugene Degnan</u>, <u>Jordan L. Fleischer</u>, <u>Ragan W. Updegraff</u>, and <u>Sabahat Chaudhary</u> also appeared.

<u>Claudia Burke</u>, Assistant Director, and <u>Elizabeth A. Speck</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States.  With them on the briefs were <u>Joseph H. Hunt</u>, Assistant Attorney General, and <u>Jeanne E. Davidson</u>, Director.  Of counsel were <u>Ayat Mujais</u> and <u>John Anwesen</u>, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

Choe-Groves, Judge:  This action arises from the first administrative review of certain corrosion-resistant steel products from the Republic of Korea ("Korea") by the U.S. Department of Commerce ("Commerce").  <u>Certain Corrosion-Resistant Steel Products From the Republic of Korea</u>, 84 Fed. Reg. 11,749 (Dep't. Commerce Mar. 28, 2019) (final results and partial rescission of countervailing duty administrative review 2015–2016) ("<u>Final Results</u>"); see <u>Certain Corrosion-Resistant Steel Products from the Republic of Korea</u>: Issues and Decision Mem. for the Final Results and Partial Rescission of Countervailing Duty Administrative Review, PR 299 (Mar. 18, 2019) ("IDM").  Before the court are two motions for judgment on the

Consol. Court No. 19-00042                                                                                          Page 3

agency record filed by Plaintiff Nucor Corporation ("Nucor") and Consolidated Plaintiffs Dongbu Incheon Steel Co., Ltd. ("Dongbu Incheon") and Dongbu Steel Co., Ltd. ("Dongbu Steel") (collectively, "Dongbu").  For the reasons that follow, the court sustains in part and remands in part the <u>Final Results</u> to Commerce for further consideration.

## ISSUES PRESENTED

This case presents the following issues:

1. Whether Commerce's determination that Dongbu did not receive a countervailable benefit from government equity infusions is supported by substantial evidence;

2. Whether Commerce's determination that Dongbu's loans from private creditors on the debt restructuring creditors committee could not be used as benchmarks for measuring benefits from the government loans is supported by substantial evidence;

3. Whether Commerce's determination that Dongbu's loan restructuring was specific is supported by substantial evidence;

4. Whether Commerce's determination that Hyundai Green Power and Hyundai Steel were not cross-owned is supported by substantial evidence; and

5. Whether Commerce's determination that Nucor's arguments concerning an alleged input supplier relationship were moot is in accordance with the law.

## BACKGROUND

Commerce published the <u>Preliminary Results</u> on August 10, 2018.  <u>Certain Corrosion-Resistant Steel Products From the Republic of Korea</u>, 83 Fed. Reg. 39,671 (Dep't. Commerce Aug. 10, 2018); see <u>Certain Corrosion-Resistant Steel Products from the Republic of Korea</u>: Decision Memorandum for the Preliminary Results of the Countervailing Duty Administrative

Review, in Part, and Intent to Rescind, in Part; 2015–16, PR 256 (Aug. 3, 2018) ("Preliminary Decision Memorandum"). Commerce published the Final Results on March 28, 2019. Final Results at 11,749. Commerce detailed its findings in the accompanying IDM.

Plaintiff initiated this action on March 28, 2019. Summons, Mar. 28, 2019, ECF No. 1; Compl. ¶ 4, Mar. 28, 2019, ECF No. 6. The court entered a statutory injunction on April 12, 2019. Am. Order for Statutory Inj. Upon Consent, Apr. 12, 2019, ECF No. 18. United States Steel Corporation intervened as Plaintiff-Intervenor on April 15, 2019. Order, Apr. 15, 2019, ECF No. 19. Dongbu intervened as Defendant-Intervenors on April 18, 2019. Order, Apr. 18, 2019, ECF No. 24. Hyundai Steel Company ("Hyundai Steel") intervened as Defendant-Intervenor on April 29, 2019. Order, Apr. 29, 2019, ECF No. 29.

The court consolidated this case with Court No. 19-00049. Order, May 10, 2019, ECF No. 32. California Steel Industries ("CSI") and Steel Dynamics, Inc. ("SDI") intervened as Defendant-Intervenors on May 14, 2019. Order, May 14, 2019, ECF No. 39. This action was reassigned on June 11, 2019. Order, June 11, 2019, ECF No. 45.

Plaintiff Nucor and Consolidated Plaintiffs Dongbu filed motions for judgment on the agency record. Mot. of Consol. Pl. Dongbu for J. on the Agency R., Aug. 20, 2019, ECF No. 51 ("Dongbu Mot."); Pl. Nucor [Rev.] Mot. for J. on the Agency R., Aug. 20, 2019, ECF No. 53 ("Nucor Mot."). Defendant and Defendant-Intervenors responded. Def.'s Mem. in Opp. to Pl. and Consol. Pl. Mot. for J. Upon the Agency R., Dec. 19, 2019, ECF No. 59 ("Def. Resp."); Resp. Br. of Def.-Int. Dongbu in Opp. to Pl. Mot for J. on the Agency R., Jan. 14, 2020, ECF No. 67 ("Dongbu Resp."); Def.-Int. Hyundai Steel Br. in Resp. to Pl. Mot. for J. on the Agency R., Jan 14, 2020, ECF No. 69 ("Hyundai Steel Resp."). Plaintiff and Consolidated Plaintiffs replied.

Pl. Nucor Reply Br., Feb. 10, 2020, ECF No. 71 ("Nucor Reply"); Reply Br. of Consol. Pl. Dongbu in Supp. Of Mot. for J. Upon the Agency R., Feb. 11, 2020, ECF No. 74 ("Dongbu Reply"). The joint appendix was filed on March 23, 2020. Joint App'x, Mar. 23, 2020, ECF Nos. 79, 79-1, 79-2, 79-3. The court decides this matter on the briefs and record, having granted the parties' motion to forgo oral argument. Order, May 19, 2020, ECF No. 84.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(B)(iii). The court will hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record, or otherwise not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i).

## ANALYSIS

**I.　Commerce's Determination That Dongbu Did Not Receive a Countervailable Benefit From Government Equity Infusions**

The first issue is whether Commerce's determination that Dongbu did not receive a countervailable benefit from government equity infusions is supported by substantial evidence.

The court requires the exhaustion of administrative remedies when appropriate. 28 U.S.C. § 2637(d). Generally, exhaustion requires that a party submit an administrative case brief to Commerce presenting all arguments that continue to be relevant to Commerce's final determination or results. United States Steel Corp. v. United States, 42 C.I.T. __, __, 348 F. Supp. 3d 1248, 1260 (2018). A party who does not adequately raise an issue to Commerce in its case brief will fail to have exhausted that issue. See Nucor Corp. v. United States, 927 F.3d

Consol. Court No. 19-00042                                                                                          Page 6

1243, 1256 (Fed. Cir. 2019) (concluding that an issue was not preserved when Nucor mentioned the issue only in passing and presented no meaningful argument about the issue).

Commerce addresses the significance of private investor participation when private investor prices are available. 19 C.F.R. § 351.507(a)(2)(iii). Here, Commerce found that private investor prices were available, and thus the significance of private investor participation was a relevant issue in Commerce's determination. Preliminary Decision Memorandum at 16 n.84. Nucor failed to raise in its administrative case brief the issue of whether the share of private investor equity infusions relevant to this case were significant for purposes of 19 C.F.R. § 351.507(a)(2)(iii), and only raises this specific issue for the first time before this court. See Nucor Case Br., PR 278 (Sept. 24, 2018) ("Nucor Case Br.") (failing to argue that private investors' percentage share of equity investments was insignificant). Because Commerce addressed the significance of private investor participation after having found that private investor prices were available, Nucor should have raised in its administrative case brief the issue of whether the share of private investor equity infusions were significant if Nucor wanted to preserve its challenge to Commerce's determination before the court.

Because Nucor failed to raise in its administrative case brief the issue of whether the share of private investor equity infusions were significant as defined by the applicable legal standard, the court concludes that Nucor failed to exhaust its administrative remedies and does not reach the merits of this issue.

II.     **Commerce's Determination That Dongbu's Loans From Private Creditors on The Debt Restructuring Creditors Committee Could Not be Used as Benchmarks For Measuring Benefits From The Government Loans**

The second issue is whether Commerce's determination that Dongbu's loans from private creditors on the debt restructuring creditors committee could not be used as benchmarks for measuring benefits from the government loans is supported by substantial evidence.

In a creditworthiness analysis, Commerce must determine whether a company could have obtained long-term loans from conventional commercial sources. Archer Daniels Midland Co. v. United States, 37 CIT __, __, 917 F. Supp. 2d 1331, 1349 (2013) (citing 19 C.F.R. § 351.505(a)(4)(i)). To make this determination, "Commerce may apply the factors set forth in 19 C.F.R. § 351.505(a)(4)(i)(A)–(D), or others it deems appropriate according to a proper exercise of its flexibility and discretion." Id. (citing Saarstahl AG v. United States, 21 CIT 1158, 1163, (1997)) (internal punctuation omitted). Commerce will normally calculate the benefit associated with the extension of a government-provided long-term loan to an uncreditworthy company. 19 C.F.R. § 351.505(a)(3)(iii); see also Notice of Final Rules, 63 Fed. Reg. 65,348, 65,401 (Nov. 25, 1998) ("CVD Preamble") (discussing separate benchmarking methodology for uncreditworthy companies). Finally, "Commerce's Issues and Decision Memorandum, by itself, does not constitute substantial evidence. In the absence of substantial evidence, [a] conclusion must be remanded." Hyundai Heavy Indus., Co. v. United States, 42 CIT __, __, 332 F. Supp. 3d 1331, 1349 (2018). For example, Commerce's discussion should not "lack[] record citations supporting the agency's findings [and] . . . consist[] of conclusory statements . . . without any examples or citations to support those statements." Id.

The parties do not dispute Commerce's finding that Dongbu was uncreditworthy during

Consol. Court No. 19-00042                                                                                       Page 8

the period of review.  IDM at 4; Dongbu Mot. at 35–43; Def. Resp. at 24.  Commerce found additionally that:

> given the influence of the [Government of Korea]–controlled banks in setting the restructured loan terms, the private banks['] . . . private loans do not reflect credit that would have been available to Dongbu in the market outside of the Creditor Bank Committee . . . [and therefore] cannot be used as a commercial benchmark when measuring the benefit conferred by the restructuring program.

IDM at 33.  Dongbu concedes that 19 C.F.R. § 351.505(a)(3)(iii) provides that for uncreditworthy companies, Commerce normally will calculate the interest rate using a formula not tied to a company's actual private loans.  Dongbu Reply at 14.  Dongbu argues that this is nonetheless not required, and that if a private loan otherwise meets the criteria for use as a benchmark, it could still be used as a benchmark.  Id.

Here, Commerce's finding that the private loans cannot be used as a benchmark is unsupported by substantial evidence.  The Government's brief cites only the IDM and the Preliminary Decision Memorandum in support of its finding, while citing no documents or other evidence in the record.  Def. Resp. at 22–24 (citing Preliminary Decision Memorandum at 12, 14–16 and IDM at 4, 32–33).  The information contained in the IDM and the Preliminary Decision Memorandum does not suffice as substantial evidence.  See Hyundai Heavy Indus., Co., 332 F. Supp. 3d at 1349.  Commerce's findings are conclusory statements to the effect that the Government of Korea–controlled banks overly influenced the private banks' behavior in the course of the restructuring program at issue, and are not based on any cited evidence in the record.  The court remands this issue to Commerce to either identify substantial record evidence in support of its finding or to reconsider its determination.

### III.	Commerce's Determination That Dongbu's Loan Restructuring Was Specific

The third issue is whether Commerce's determination that Dongbu's loan restructuring was specific is supported by substantial evidence.

A subsidy is countervailable when an authority provides a financial contribution to a person, a benefit is conferred, and the subsidy is specific, as described in 19 U.S.C. § 1677(5A). 19 U.S.C. § 1677(5)(A)–(B). A subsidy is specific if it is an export subsidy, an import substitution subsidy, or a domestic subsidy under 19 U.S.C. § 1677(5A)(A)–(D). Domestic subsidies are specific, and thus countervailable, when "[t]he actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited in number." Changzhou Trina Solar Energy Co. v. United States, 42 CIT __, __, 352 F. Supp. 3d 1316, 1330 (2018) (quoting 19 U.S.C. § 1677(5A)(D)(iii)(I)). Separately, the court will not sustain Commerce's determination when Commerce failed to address a party's relevant argument. See Stein Industries Inc. v. United States, 43 CIT __, __, 365 F. Supp. 3d 1364, 1371 (2019) (remanding to Commerce to consider an argument that Commerce failed to address).

Dongbu argues that Commerce treated Dongbu's corporate restructuring improperly by treating restructuring differently than under bankruptcy and further asserts that Commerce did not address this argument. Dongbu Mot. at 22; Dongbu Reply at 2–9. Commerce responds that its reference to the original investigation and restatement of the relevant facts suffices to address Dongbu's argument. Def. Resp. at 28 (citing Countervailing Duty Investigation of Certain Corrosion-Resistant Steel Products From the Republic of Korea: Final Affirmative Determination, and Final Affirmative Critical Circumstances Determination, in Part, 81 Fed. Reg. 35,310, and accompanying Issues and Decision Memorandum at cmt. 4).

Despite Commerce's argument to the contrary, Commerce's cited references in the IDM and the Preliminary Decision Memorandum to the original investigation do not address directly Dongbu's argument. IDM at 21, 31; Preliminary Decision Memorandum at 14. Because the court cannot evaluate this issue on an incomplete record, the court concludes that Commerce's determination that Dongbu's loan restructuring was specific is not supported by substantial evidence. The court remands this issue to Commerce to respond to Dongbu's argument and either support its determination with substantial record evidence or reconsider its determination.

## IV. Commerce's Determination That Hyundai Green Power and Hyundai Steel Were Not Cross-Owned

The fourth issue is whether Commerce's determination that Hyundai Green Power and Hyundai Steel were not cross-owned is supported by substantial evidence.

Generally, Commerce "attributes subsidies to goods produced by the company receiving the subsidy." Nantong Uniphos Chems. Co. v. United States, Slip Op. 18-78, 2018 WL 3134845, at *2 (CIT June 25, 2018) (describing 19 C.F.R. § 351.525(b)(6)(i)). When two or more corporations with cross-ownership produce the subject merchandise, Commerce will attribute the subsidies received by either or both corporations to the products produced by both corporations. 19 C.F.R. § 351.525(b)(6)(ii). If the cross-owned corporations are an input supplier and a downstream producer, and production of the input product is primarily dedicated to production of the downstream product, Commerce will attribute subsidies received by the input producer to the combined sales of the input and downstream products produced by both corporations. Id. § 351.525(b)(6)(iv). Cross-ownership exists when, between two or more corporations, one corporation can use or direct the individual assets of the other corporation(s) in

Consol. Court No. 19-00042                                                                                      Page 11

essentially the same ways it can use its own assets.  <u>Id.</u> § 351.525(b)(6)(vi).  The cross-ownership standard normally is met when there is a majority voting ownership interest between two corporations or through common ownership of two or more corporations.  <u>Id.</u>  The CVD Preamble adds that "[i]n certain circumstances, a large minority voting interest (for example, 40 percent) or a 'golden share' may also result in cross-ownership."  CVD Preamble at 65,401.

    Commerce's finding that Hyundai Steel and Hyundai Green Power were not cross-owned is supported by substantial evidence.  IDM at 16–17.  The record shows that Hyundai Steel's ownership share in Hyundai Green Power was 29 percent, considerably less than the 40 percent contemplated by the CVD Preamble.  Hyundai Green Power Initial Questionnaire Response, CR 224–37 at Exhibit 3 (June 22, 2018); <u>see also</u> Hyundai Steel Resp. at 16 (conceding that Hyundai Steel's ownership share was 29 percent); CVD Preamble at 65,401.  Nucor argues that Hyundai Steel's and Hyundai Green Power's operations are intertwined and interdependent, that Hyundai Steel can use or direct the individual assets of Hyundai Green Power in essentially the same way it can use its own assets, and subsidies to Hyundai Green Power directly benefit Hyundai Steel's production of the subject merchandise.  Nucor Mot. at 24.  Nucor concedes that Hyundai Steel had a right to buy the shares of Hyundai Green Power from all other shareholders as of October 2019, well after the 2015–2016 period of review at issue here.  Nucor Mot. at 25; <u>see</u> Hyundai Steel Response to Nucor's New Subsidy Allegation, CR 147–155 at 9 (Mar. 27, 2018).  Nucor points to no record evidence sufficient to render Commerce's finding unreasonable; despite Nucor's efforts, the record does not support the existence of a "golden share."  <u>See</u> Nucor Mot. at 19–35; <u>see</u> Nucor Reply at 13–21.

The court sustains Commerce's finding that Hyundai Steel and Hyundai Green Power were not cross-owned because Commerce's determination is supported by substantial evidence.

**V.     Commerce's Determination That Nucor's Arguments Regarding an Alleged Input Supplier Relationship Were Moot**

The fifth issue is whether Commerce's determination that Nucor's arguments regarding an alleged input supplier relationship were moot is in accordance with the law.

The input supplier relationship analysis under 19 C.F.R. § 351.525(b)(6)(iv) requires a prerequisite finding of cross-ownership. 19 C.F.R. § 351.525(b)(6)(iv) (providing for an input supplier subsidy analysis "[i]f there is cross-ownership").

Commerce concluded that Nucor's arguments regarding an alleged input supplier relationship between Hyundai Steel and Hyundai Green Power under 19 C.F.R. § 351.525(b)(6)(iv) were moot. IDM at 17 (noting that "[a]bsent cross-ownership, we find petitioners' arguments regarding subsidies received by cross-owned companies and any consequent attribution to be moot"); see Nucor Mot. at 30–33, Nucor Reply at 13–20.

As previously stated above, the court concluded that Commerce's finding that Hyundai Steel and Hyundai Green Power were not cross-owned is supported by substantial evidence. Because the pre-requisite finding of cross-ownership under the relevant legal standard has not been met, an input supplier relationship analysis for cross-owned entities cannot be conducted. The court sustains, therefore, Commerce's determination that Nucor's arguments were moot because it is in accordance with the law.

## CONCLUSION

For the foregoing reasons, the court remands this matter to Commerce for further proceedings consistent with this opinion. Accordingly, upon consideration of all papers and proceedings in this action, it is hereby

**ORDERED** that this action shall proceed in accordance with the following schedule:

1. Commerce must file its remand determination on or before August 31, 2020;

2. Commerce must file the administrative record on or before September 14, 2020;

3. The Parties' comments in opposition to the remand determination must be filed on or before September 30, 2020;

4. The Parties' comments in support of the remand determination must be filed on or before October 30, 2020;

5. The Joint Appendix must be filed on or before November 13, 2020.

                                                  /s/ Jennifer Choe-Groves  
                                                 Jennifer Choe-Groves, Judge

Dated:     July 2, 2020  
           New York, New York