Slip Op. 21-22

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NUCOR CORPORATION, | |
|     Plaintiff, | |
| and | |
| DONGBU INCHEON STEEL CO., LTD., and DONGBU STEEL CO., LTD., | |
|     Consolidated Plaintiffs, | |
| and | |
| UNITED STATES STEEL CORPORATION, | |
|     Plaintiff-Intervenor, | Before: Jennifer Choe-Groves, Judge |
| v. | Consol. Court No. 19-00042 |
| UNITED STATES, | |
|     Defendant, | |
| and | |
| DONGBU STEEL CO., LTD., DONGBU INCHEON STEEL CO., LTD., HYUNDAI STEEL COMPANY, NUCOR CORPORATION, UNITED STATES STEEL CORPORATION, CALIFORNIA STEEL INDUSTRIES, and STEEL DYNAMICS, INC., | |
|     Defendant-Intervenors. | |

# OPINION

[Sustaining the remand results of the U.S. Department of Commerce in the first administrative review of the countervailing duty order on certain corrosion-resistant steel products from the Republic of Korea.]

Dated: February 22, 2021

Alan H. Price, Robert E. DeFrancesco, III, Tessa V. Capeloto, Adam M. Teslik, and Elizabeth S. Lee, Wiley Rein LLP, of Washington, D.C., for Plaintiff and Defendant-Intervenor Nucor Corporation.

Donald B. Cameron, Julie C. Mendoza, R. Will Planert, Brady W. Mills, Mary S. Hodgins, and Jordan L. Fleischer, Morris, Manning, & Martin, LLP, of Washington, D.C., for Consolidated Plaintiffs and Defendant-Intervenors Dongbu Steel Co., Ltd. and Dongbu Incheon Steel Co., Ltd.

Claudia Burke, Assistant Director, and Elizabeth A. Speck, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With them on the briefs were Jeffrey Bossert Clark, Acting Assistant Attorney General, and Jeanne E. Davidson, Director. Of counsel was Ayat Mujais, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

Choe-Groves, Judge: Consolidated Plaintiffs Dongbu Incheon Steel Co., Ltd. and Dongbu Steel Co., Ltd. (collectively, "Dongbu") and Plaintiff Nucor Corporation ("Nucor") filed this consolidated action challenging the final results published by the U.S. Department of Commerce ("Commerce") in the first administrative review of the countervailing duty order on certain corrosion-resistant steel products from the Republic of Korea. See Certain Corrosion-Resistant Steel Products from the Republic of Korea ("Final Results"), 84 Fed. Reg. 11,749 (Dep't Commerce Mar. 28, 2019) (final results and partial rescission of countervailing duty administrative review; 2015–2016); see also Issues and Decision Mem. for the Final Results and Partial Rescission of Countervailing Duty Admin. Review, PD 299 (Mar. 18, 2019) ("Final IDM"). Before the court are the Final Results of Redetermination Pursuant to Court Remand, ECF Nos. 88, 89 ("Remand Results"), which the court ordered in Nucor Corp. v. United States

("Nucor I"), 44 CIT __, 461 F. Supp. 3d 1374 (2020). For the following reasons, the court sustains the Remand Results.

## ISSUES PRESENTED

This case presents the following issues:

1. Whether Commerce's determination that Dongbu's loans could not be used as a benchmark for measuring benefits from government loans is supported by substantial evidence; and

2. Whether Commerce's determination that Dongbu's loan restructuring was a specific subsidy is supported by substantial evidence.

## BACKGROUND

The court presumes familiarity with the facts and procedural history as set forth in its prior opinion and recounts the facts relevant to the court's review of the Remand Results. See Nucor I, 44 CIT at __, 461 F. Supp. 3d at 1377.

In the Final Results, Commerce determined that Dongbu's loans from private creditors on the debt restructuring committee could not be used as a benchmark for measuring benefits from government loans. See Final IDM at 32–33. Commerce determined that Dongbu was uncreditworthy and calculated a benchmark rate based on the formula for uncreditworthy companies. Id. Commerce also determined that Dongbu's loan restructuring was a countervailable, specific subsidy. Id. at 31. Dongbu challenged these determinations in Nucor I.

The court held in Nucor I that Commerce's determination that Dongbu's loans from private creditors could not be used as a benchmark was unsupported by substantial evidence on the record. Nucor I, 44 CIT at __, 461 F. Supp. 3d at 1378–79. The court also held that Commerce failed to address Dongbu's arguments challenging Commerce's determination that

Dongbu's loan restructuring was a specific subsidy and that Commerce did not support its determination with substantial evidence. Id. at __, 461 F. Supp. 3d at 1379–80. The court remanded the case to Commerce for further proceedings. Id. at __, 461 F. Supp. 3d at 1382.

Commerce filed the Remand Results on September 30, 2020. On remand, Commerce maintained its determinations that loans from private creditors could not be used as a benchmark and that Dongbu's loan restructuring was a specific subsidy. See Remand Results at 34. Dongbu filed comments in opposition to the Remand Results. Comments of Consol. Pls. [Dongbu] in Opp'n to Remand Determination of [Commerce], ECF Nos. 93, 94 ("Dongbu Cmts."). Defendant United States ("Defendant") and Nucor filed reply comments in support of the Remand Results. Def.'s Resp. Comments in Supp. of [Commerce's] Remand Redetermination, ECF Nos. 95, 96 ("Def. Cmts."); Comments of [Nucor] in Supp. of Remand Redetermination, ECF Nos. 97, 98 ("Nucor Cmts.").

**JURISDICTION AND STANDARD OF REVIEW**

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(B)(iii). The court will hold unlawful any determination found to be unsupported by substantial evidence on the record or otherwise not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i). The court also reviews determinations made on remand for compliance with the court's remand order. Ad Hoc Shrimp Trade Action Comm. v. United States, 38 CIT __, __, 992 F. Supp. 2d 1285, 1290 (2014), aff'd, 802 F.3d 1339 (Fed. Cir. 2015).

**DISCUSSION**

I.   **Commerce's Determination that Dongbu's Loans from Private Creditors Could Not Be Used as a Benchmark**

The first issue before the court is whether Commerce's determination that Dongbu's loans from private creditors could not be used as a benchmark for measuring benefits from

government loans is supported by substantial evidence. In Nucor I, the court found that Commerce had failed to support its benchmark determination with substantial evidence on the record and remanded accordingly. Nucor I, 44 CIT at __, 461 F. Supp. 3d at 1378–79.

Commerce maintained its determination on remand that Dongbu's loans from private creditors could not be used as a benchmark for measuring benefits from government loans. See Remand Results at 3–10, 26–29. Dongbu argues that even if Dongbu was uncreditworthy, Commerce could have used Dongbu's loans as a benchmark. See Dongbu Cmts. at 3–6. Dongbu asserts that Commerce failed to support its determination with substantial evidence that Dongbu's loans were not comparable commercial loans that could be used as a benchmark. See id. at 6–13. Defendant responds that Commerce complied with the court's remand order and supported its determination with substantial evidence. See Def. Cmts. at 5–11.

Commerce must determine in a creditworthiness analysis whether a company could have obtained long-term loans from conventional commercial sources. See Nucor I, 44 CIT at __, 461 F. Supp. 3d at 1379. While comparable commercial loans may be used as a benchmark to calculate a countervailable benefit, loans provided under a government program are not considered to be commercial. See 19 U.S.C. § 1677(5)(E)(ii); 19 C.F.R. § 351.505(a)(2)(ii). Commerce follows the applicable regulations when conducting a creditworthiness analysis. See 19 C.F.R. § 351.505. If Commerce determines that a company is uncreditworthy, as defined in 19 C.F.R. § 351.505(a)(4), Commerce will normally calculate the benefit associated with the extension of a government-provided long-term loan to an uncreditworthy company during the period of review, as follows:

> If the Secretary finds that a firm that received a government-provided long-term loan was uncreditworthy, as defined in paragraph (a)(4) of this section, the Secretary normally will calculate the interest rate to be used in making the

> comparison called for by paragraph (a)(1) of this section according to the following formula:
>
> $i^b = [(1 - q^n)(1 + i^f)^n / (1 - p^n)]^{1/n} - 1,$
> where:
> n = the term of the loan;
> $i^b$ = the benchmark interest rate for uncreditworthy companies;
> $i^f$ = the long-term interest rate that would be paid by a creditworthy company;
> $p^n$ = the probability of default by an uncreditworthy company within n years; and
> $q^n$ = the probability of default by a creditworthy company within n years.

19 C.F.R. § 351.505(a)(3)(iii).

Commerce supported its determination that Dongbu's loans could not be used as a benchmark by citing evidence showing the substantial government influence and inclusion of government programs, Dongbu's debt restructuring agreement that was significantly influenced by the state-owned Korea Development Bank, and low-interest loans provided by government-influenced banks. See Remand Results at 5–10, 27–29. The court concludes that it was reasonable for Commerce to determine that Dongbu's loans were non-commercial and provided under a government program based on record evidence demonstrating the significant influence of the state-owned Korea Development Bank in Dongbu's restructuring. See Remand Results at 5–7 (citing Certain Corrosion-Resistant Steel Products from the Republic of Korea, Case No. C-580-879: [Dongbu's] Initial Questionnaire Resp., PD 111–26 (Feb. 13, 2018) ("Dongbu Feb. 13 Resp.")); see also Admin. Review on Certain Corrosion-Resistant Steel Products from the Republic of Korea: [Government of Korea's] Resp. at 13–14, PD 94–110 (Feb. 12, 2018) ("Korea Feb. 12 Resp."). Commerce complied with the court's remand order by supporting the benchmark determination with citations to substantial evidence on the record. See Remand Results at 5–10 (citing Korea Feb. 12 Resp.; Dongbu Feb. 13 Resp.; Certain Corrosion-Resistant Steel Products from the Republic of Korea, Case No. C-580-879: [Government of Korea's] Second Suppl. Questionnaire Resp., PD 239 (July 6, 2019) ("Korea July 6 Second Suppl.

Resp.")). The court concludes that Commerce determined properly that Dongbu's loans could not be used for calculating a benchmark interest rate because the loans provided under the government program were non-commercial. The court notes that the relevant statute and regulations do not require Commerce to use every loan received by a company as a benchmark. See 19 U.S.C. § 1677(5)(E)(ii); 19 C.F.R. § 351.505(a)(2)(ii). To the contrary, the regulations contemplate the possibility that some loans may be inappropriate to use as a benchmark. See 19 C.F.R. § 351.505(a)(2)(ii).

In addition, Commerce determined as a preliminary matter that Dongbu was uncreditworthy during the period of review. Remand Results at 3 (citing Final IDM at 4 (citing Decision Mem. for the Prelim. Results of the Countervailing Duty Admin. Review at 12, PD 256 (Aug. 3, 2018) ("Prelim. DM") (citing Certain Corrosion-Resistant Steel Products from the Republic of Korea, Case No. C-580-879: First Suppl. Questionnaire Resp. at 8–9, PD 185 (June 14, 2018) ("Dongbu Letter")))). The court observes that Dongbu conceded its uncreditworthiness, referenced by Commerce in the Remand Results and demonstrated in the Dongbu Letter on the record:

> Dongbu did not receive any long-term loans in 2016 . . . . Dongbu therefore does not contest the Petitioner's uncreditworthiness allegation for Dongbu in 2015 and 2016, because it has not obtained any comparable commercial loans that could be relied upon to rebut the Department's previous determination that it was not creditworthy . . . . Nor have the present or past financial indicators relied upon by the Department in the original investigation materially changed in a way that would lead to a different conclusion.

Dongbu Letter at 8–9; see also Remand Results at 3–4. The court concludes that because Commerce's determination that Dongbu was uncreditworthy was based on Dongbu's lack of comparable commercial loans and an admission contained in a record document, Commerce's determination is reasonable and supported by substantial evidence. See Remand Results at 5, 10.

Because Commerce determined reasonably that Dongbu was uncreditworthy during the period of review, the court concludes that Commerce applied the proper formula for uncreditworthy companies when it calculated Dongbu's benchmark interest rate. Id. at 3–5; Final IDM at 33; see also 19 C.F.R. § 351.505(a)(3)(iii).

The court holds that Commerce's remand redetermination that Dongbu's loans from private creditors could not be used as a benchmark for measuring benefits from government loans is supported by substantial evidence. The court sustains Commerce's benchmark interest rate determination based on uncreditworthiness pursuant to the relevant regulations.

## II.     Commerce's Determination that Dongbu's Loan Restructuring Was a Specific Subsidy

The second issue before the court is whether Commerce's determination that Dongbu's loan restructuring was a specific subsidy is supported by substantial evidence. In Nucor I, the court found that Commerce had failed to address Dongbu's arguments challenging Commerce's specificity determination and remanded for Commerce to respond to Dongbu's arguments and support its determination with substantial evidence on the record. Nucor I, 44 CIT at __, 461 F. Supp. 3d at 1379–81.

Commerce maintained its determination on remand that Dongbu's loan restructuring was a specific subsidy. See Remand Results at 11–19, 32–34. Dongbu argues that its loan restructuring was not a specific subsidy and should be treated in the same manner as bankruptcy proceedings. See Dongbu Cmts. at 13–19. Defendant argues that Dongbu's loan restructuring is a specific subsidy and that Commerce complied with the court's remand order by responding to Dongbu's arguments and citing substantial record evidence. See Def. Cmts. at 11–15.

A subsidy is countervailable when an authority provides a financial contribution to a person, a benefit is conferred, and the subsidy is specific. 19 U.S.C. § 1677(5)(A)–(B). A

subsidy is specific if it is an export subsidy, an import substitution subsidy, or a domestic subsidy. Id. § 1677(5A)(A)–(D). Domestic subsidies are specific when one or more of the following factors exist: the actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited in number; an enterprise or industry is a predominant user of the subsidy; an enterprise or industry receives a disproportionately large amount of the subsidy; or the manner in which the subsidy is granted indicates that an enterprise or industry is favored over others. Id. § 1677(5A)(D)(iii).

Commerce determined during the initial antidumping investigation that the loan restructuring program used by Dongbu was a specific subsidy. See Remand Results at 12 (citing Countervailing Duty Investigation of Certain Corrosion-Resistant Steel Products from the Republic of Korea, 81 Fed. Reg. 35,310 (June 2, 2016) (final determination), and accompanying Issues and Decision Mem. at Cmt. 4). Commerce noted on remand based on record evidence that the loan restructuring program was used by twenty-five companies between 2011 and 2016. See id. at 16–17 (citing Korea Feb. 12 Resp.). Commerce determined that the actual recipients of the loan restructuring were limited in number on an enterprise basis. Id. at 16 (citing Prelim. DM). Commerce determined that the loan restructuring program used by Dongbu was a specific subsidy under the factors enumerated in 19 U.S.C. § 1677(5A)(D)(iii) because the subsidy was not broadly available and was not widely used throughout the economy. Id.; see 19 U.S.C. § 1677(5A)(D)(iii)(I).

Commerce addressed Dongbu's arguments challenging Commerce's specificity determination in accordance with the court's remand order. Dongbu argues that its loan restructuring operates similarly to bankruptcy, that Commerce does not consider bankruptcy proceedings to be a specific subsidy, and, therefore, that Commerce should not consider the loan

restructuring to be a specific subsidy. See Dongbu Cmts. at 13–19. Commerce maintained its determination that Dongbu's voluntary loan restructuring operated differently from bankruptcy proceedings. Remand Results at 16. Commerce determined on remand that Dongbu's loan restructuring was used only by a limited number of enterprises, was supervised by a committee comprised mostly of state-owned policy banks, and was not administered by a bankruptcy court, based on record evidence including the Korea Feb. 12 Resp., Korea July 6 Second Suppl. Resp., and Dongbu Feb. 13 Resp. Id. at 16–18, 33–34. Commerce determined based on this record evidence that Dongbu's voluntary loan restructuring operated differently from bankruptcy proceedings, and Commerce maintained its specificity determination accordingly. Id. at 19.

The court concludes that Commerce's remand redetermination that Dongbu's loan restructuring was a specific subsidy that operated differently from bankruptcy proceedings is supported by substantial evidence. The court sustains Commerce's specificity determination.

## CONCLUSION

In summary, the court holds that Commerce supported its remand redetermination with substantial evidence that Dongbu's loans from private creditors could not be used as a benchmark for measuring benefits from government loans and that Dongbu's loan restructuring was a specific subsidy that operated differently from bankruptcy proceedings. The court sustains Commerce's Remand Results. Judgment will be entered accordingly.

                                                   /s/ Jennifer Choe-Groves
                                                   Jennifer Choe-Groves, Judge

Dated: February 22, 2021
       New York, New York